HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONTINENTAL WESTERN
INSURANCE COMPANY,

        Plaintiff,

  v.

COSTCO WHOLESALE
CORPORATION,

        Defendant.

CASE NO. C10-1987 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. Dkt. ## 9, 13. Plaintiff Continental Western Insurance Company("CWIC") contends that it owes Defendant Costco Wholesale Corporation ("Costco") neither a duty to defend nor a duty to indemnify for injuries Sara Mickas suffered in a Costco parking lot. Costco contends that CWIC must defend and indemnify it as a matter of law. Costco requested oral argument solely as to its own summary judgment motion, no party otherwise requested oral argument. The court finds oral argument unnecessary. For the reasons stated herein, the court DENIES CWIC's motion (Dkt. # 9), GRANTS Costco's motion (Dkt. # 13) and directs the clerk to enter judgment for Costco.

## II. BACKGROUND

Ms. Mickas suffered injuries just outside a Bellingham Costco store on February 27, 2009. At the time, she was acting as an independent contractor for Fine Line Pacific LLC ("Fine Line"). Fine Line makes countertops, and at all relevant times was in a contractual relationship with Costco to sell its countertops at Costco stores. Ms. Mickas was delivering a Fine Line purchase order document to the Costco store when she tripped on a rock just outside the entrance to the store. She contends that she was injured.

Ms. Mickas sued Costco in Whatcom County Superior Court in June 2010. Costco answered and filed a third-party complaint against Fine Line, arguing that it was obligated to indemnify Costco for any liability. So far as the record reveals, the Whatcom County litigation has not yet reached a resolution.

Costco has also turned to CWIC, Fine Line's general commercial liability ("GCL") carrier. Costco's contract with Fine Line obligates Fine Line to maintain GCL insurance and to make Costco an additional insured on the GCL policy. The CWIC CGL policy (the "Policy") makes Costco an additional insured, but only in some circumstances:

> Only the following persons or organizations are additional insureds under this endorsement, and coverage provided to such additional insureds is limited as provided herein:
>
> . . .
>
> (3) Any person or organization referred to below as vendor, but only with respect to "bodily injury": or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business . . . .

Policy, Gen. Liability Enhancement Endorsement, ¶ E.f (Bickel Decl. (Dkt. # 12), Ex. 4). The court refers to this provision as the "Arising-Out-of-Products Clause" or simply the "Clause." There is no dispute that Costco is a "vendor" within the meaning of the Clause.

ORDER- 2

1 | CWIC is providing Costco a defense in the Whatcom County litigation, subject to
2 | a reservation of rights. It filed this declaratory judgment action seeking a declaration that
3 | it owes Costco neither a duty to defend nor a duty to indemnify it in that suit.
4 | The parties' dispute[1] is over whether the injuries to Ms. Mickas are injuries
5 | "arising out of [Fine Line's] products." The court now turns to that question.

### III. ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

In Washington, insurance policy interpretation is a legal question. *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect."). The court must give the terms of the policy a "fair, reasonable, and

---

[1] In addition to the Arising-Out-of-Products Clause, CWIC points to several other Policy provisions and contends that they do not make Costco an insured. Costco, however, has disclaimed any argument that a part of the Policy other than the Clause makes it an additional insured. Costco Mot. (Dkt. # 13) at 6 n.13. The court accordingly does not address CWIC's arguments regarding other policy provisions.

sensible construction as would be given to the contract by the average person purchasing insurance." *Id*. (internal quotation omitted). Terms defined within a policy are to be construed as defined, while undefined terms are given their "ordinary and common meaning, not their technical, legal meaning." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997). Dictionaries may assist in determining the ordinary meaning of a term. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists. *Peasley*, 932 P.2d at 1246 (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (2004)); *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity exists "when, reading the contract as a whole, two reasonable and fair interpretations are possible."). Extrinsic evidence may provide the meaning of an ambiguous term, but only where that evidence shows that both parties to the policy intended a particular meaning. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998); *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("If a clause is ambiguous, [a court] may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity."). Because parties rarely negotiate the terms of an insurance policy, there is rarely evidence of the parties' mutual intent as to the meaning a policy term. Where extrinsic evidence does not resolve an ambiguity, the court must construe the ambiguous term in favor of the insured. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 141 (Wash. 2000); *see also Hammonds*, 865 P.2d at 562 (directing courts to resolve ambiguity against insurer "even where the insurer may have intended another meaning").

    The phrase "arising out of" has a broad meaning in an insurance policy, requiring only a causal connection between the events that it links. For example, an insurance policy providing coverage for damages "arising out of the ownership or use of [an] owned automobile" requires only a "causal connection between the use [of the automobile] and the accident." *Transamerica Ins. Group v. United Pac. Ins. Co.*, 593

P.2d 156, 158 (Wash. 1979). "Arising out of" means something less than "proximately caused by"; it requires only a causal contribution. *Id.* The phrase is not, as a matter of law, ambiguous. *Wash. State Toll Bridge Auth. v. Aetna Ins. Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989) ("The phrase 'arising out of' is unambiguous and has a broader meaning than 'caused by' or 'resulted from.'"). The phrase means "'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" *Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 198 P.3d 514, 521 (Wash. Ct. App. 2008). Because "arising out of" is unambiguous, the court has no occasion to consider extrinsic evidence.[2]

So far as the court is aware, no Washington court has construed "arising out of" in a clause materially the same as the Arising-Out-of-Products clause. The court nonetheless discusses a few Washington cases construing the phrase, as they illustrate its broad construction. Two cases consider the phrase in the context of car insurance. In *Transamerica*, a passenger in a truck accidentally shot the driver while removing a rifle from the truck's gun rack. 593 P.2d at 157. The trial court concluded that the rifle's trigger had brushed against a portion of the gun rack, which was affixed to the truck. *Id.* On appeal, the issue was whether a clause covering "damages . . . [a]rising out of the ownership or use of the owned automobile" applied. *Id.* at 158. Noting the broad interpretation of "arising out of" described above, the court concluded that the relevant "question [was] whether the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury." *Id.* at 159. Because the gun rack, a permanently affixed portion of the truck, impacted the trigger and caused the accident, the court concluded that the insurance policy provided coverage. *Id.* at 160.

---

[2] The court is unaware of any extrinsic evidence material to the outcome of this dispute. The parties both discuss the contract in which Fine Line agreed to provide insurance for Costco, but that contract does not suggest that the parties had a mutual understanding of the meaning of the Arising-Out-of-Products Clause.

In *Mutual of Enumclaw Ins. Co. v. Jerome*, 856 P.2d 1095, 1095-96 (Wash. 1993), the court considered injuries to a driver that occurred when his passenger lit fireworks inside the car but failed in his attempt to throw them out before they exploded. Although the policy in that case covered damages "resulting from the ownership, maintenance, or use of a covered vehicle," the court treated the phrase "resulting from" as the equivalent of "arising out of." *Id.* at 1096, 1097. There, the court found "no evidence [that] any part of the [car] or permanent attachments thereto came in contact with [the passenger]'s hand, arm, or shoulder during the throwing motion which could have contributed to the dropping of the firecrackers." *Id.* at 1098. It thus held that the accident did not arise out of the use of the car. *Id.*

In *Equilon Enters. L.L.C. v. Great Am. Alliance Ins. Co.*, 132 P.3d 758 (Wash. Ct. App. 2006), the court consider a clause that made Shell Oil Company an additional insured with respect to a gas distributor's GCL policy, but "only with respect to liability arising out of [the distributor's] operations or premises owned by or rented to [the distributor]." *Id.* at 759. Among other things, Shell had licensed the distributor to "use Shell signs and other identifying materials" at gas stations that the distributor supplied. *Id.* After a boy suffered injuries in a criminal assault by third parties at a gas station that the distributor supplied, he sued the gas station and Shell. *Id.* at 760. The complaint alleged that Shell was liable via agency principles. *Id.* The court found that Shell was an additional insured, because the boy claimed that he assumed the gas station would be safe because it was marked with Shell signs. *Id.* at 762. The use of Shell signs, the court held, was an aspect of the distributor's operations. *Id.* The court thus held that Shell's liability arose out of the distributor's operations, as the CGL policy required. *Id.*

Costco touts *Equilon* as dispositive of its claim for coverage, but the court disagrees. If Fine Line's Policy, like the distributor's policy in *Equilon*, had made Costco an additional insured for "liability arising out of Fine Line's operations," then Costco would be an additional insured with respect to Ms. Mickas's lawsuit. Her lawsuit alleges

ORDER- 6

that while carrying out Fine Line operations (*i.e.*, delivering a purchase order), she suffered an injury. But Fine Line obtained a different policy, one that made Costco an additional insured not for liability arising out of Fine Line operations, but for injuries arising out of Fine Line's products.

Courts applying other states' laws have considered the phrase "arising out of" in clauses materially identical to the Arising-Out-of-Products Clause and given the phrase a broad construction. In *Ohio Cas. Ins. Co. v. Petsmart, Inc.*, No. 03 C 4755, 2003 U.S. Dist. LEXIS 22782, at *2 (N.D. Ill. Dec. 16, 2003), a cat scratching post fell from a pet store shelf and injured a customer. The customer sued the store; the store in turn sued the scratching post manufacturer. Like Costco, the pet store sought coverage as an additional insured via an Arising-Out-of-Products Clause in the manufacturer's CGL policy. *Id.* at *8-9. The pet store prevailed, even though the insurer argued that only the pet store's negligence, not any fault of the manufacturer, caused the injury. *Id.* at *14-16.

In *Safeway, Inc. v. Liberty Mut. Ins. Co.*, No. 08-460, 2009 U.S. Dist. LEXIS 37502 (D. Del. Apr. 30, 2009), a national chain store prevailed in circumstances similar to this case. A truck driver for a produce supplier fell on the loading dock of a grocery store while he was delivering produce to the store. *Id.* at *2. He sued the grocery store for allowing ice to form on the dock. *Id.* Like Costco, the grocery store sought coverage under the produce supplier's CGL policy, which contained an Arising-Out-of-Products Clause. *Id.* at *3-4. The court held that a "fall suffered while performing duties as [the produce supplier's] employee is sufficient to establish that his injuries were sustained 'in connection with' [the supplier's] products." *Id.* at *8. The court reached this conclusion even though it conceded that the injuries "were not the direct result of [the supplier's] produce." *Id.* at *7.

Neither of these cases binds the court, but they illustrate the application of a broad meaning of "arising out of" in an Arising-Out-of-Products Clause. Neither Delaware law (applied in *Safeway*) nor Illinois law (at issue in *Petsmart*) differs materially from

Washington law in the interpretation of "arising out of." In *Safeway*, the supplier's product did not cause the injury in any direct sense, but the product was the reason that the employee was present at the store when the injury happened.

In this case, Ms. Mickas's injuries arise out of Fine Line's products. There is no allegation that her injuries arise directly from Fine Line's products. But that was the case in *Safeway*, where there was no indication that the supplier's products directly caused the injury to its deliveryperson. The causal connection between the supplier's products and the injury was that the products were the reason that the deliveryperson was present at the store when the accident occurred. Similarly, Fine Line's countertops were the reason that Ms. Mickas was present at the Costco where she suffered her injuries. This is undoubtedly a weak causal connection. But it is a causal connection, and Washington law requires no more. In *Jerome*, the insurer was able to avoid liability because the party seeking coverage could articulate no causal link between the car in which the accident happened and the accident. Because Costco has articulated such a link, it must prevail as a matter of law.

Before concluding, the court notes that its holding today means that CWIC has a duty to defend Costco in the Whatcom County litigation. An insurer's duty to defend is broader than its duty to indemnify. *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). Typically, the complaint in a lawsuit filed against the insured is the trigger for the duty to defend. *Id.* An insurer must examine the allegations in the complaint, construe them liberally, and determine whether, if proven, the allegations would impose a liability on the insured that the policy would cover. *Truck Ins. Exchange v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002) ("[T]he duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint.") (emphasis in original). Ms. Mickas's lawsuit alleges an injury arising out of Fine Line's product. To determine whether an insurer has a duty to indemnify, by contrast, the insured cannot rest on the allegations of a lawsuit against it. Instead, the insured must look to the actual

liability it has incurred to determine if it is covered under the policy. So far as the court is aware, Costco has yet to incur a liability to Ms. Mickas. It is conceivable that Costco will never incur liability to her (if it prevails in the lawsuit). It is also conceivable that Costco will incur a liability to Ms. Mickas that is not covered under the Policy (if, for example, an exclusion in the Policy applies to the ultimate liability). But neither CWIC nor Costco has raised this concern. Both of them have requested a declaration determining both CWIC's duty to defend and its duty to indemnify. As the parties do not ask the court to withhold judgment on the duty to indemnify, the court will not do so.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Costco's motion for summary judgment (Dkt. # 13) and DENIES CWIC's motion for summary judgment (Dkt. # 9). The court directs the clerk to enter judgment for Costco.

DATED this 21st day of June, 2011.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge