UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONTINENTAL WESTERN
INSURANCE COMPANY,

Plaintiff,

v.

COSTCO WHOLESALE
CORPORATION,

Defendant.

CASE NO. C10-1987 RAJ

ORDER

This matter comes before the court on a motion for reconsideration from Plaintiff Continental Western Insurance Company("CWIC"). Dkt. # 20. For the reasons stated below, the court DENIES the motion.

On June 21, the court granted summary judgment for Defendant Costco Wholesale Corporation ("Costco"). Dkt. # 18. The parties disputed the interpretation of a clause in a general commercial liability ("GCL") insurance policy that CWIC issued to a Costco vendor. The clause in question made Costco an additional insured for any bodily injury or property damage "arising out of" the vendor's products. The court referred to this provision as the "Arising-Out-of-Products Clause." Costco invoked the clause to force CWIC to defend and indemnify it in a suit that one of the vendor's contractors brought after she tripped on a rock near a Costco store entrance and injured herself.

The court observed that no Washington court had construed the phrase "arising out of" in a clause materially identical to the Arising-Out-of-Products clause. Washington courts had, however, construed the phrase as it appeared in other insurance policy clauses. Courts outside of Washington, however, had construed the phrase in clauses essentially identical to the Arising-Out-of-Products Clause, and had interpreted the phrase quite broadly. The court cited *Ohio Cas. Ins. Co. v. Petsmart, Inc.*, No. 03 C 4755, 2003 U.S. Dist. LEXIS 22782 (N.D. Ill. Dec. 16, 2003) and *Safeway, Inc. v. Liberty Mut. Ins. Co.*, No. 08-460, 2009 U.S. Dist. LEXIS 37502 (D. Del. Apr. 30, 2009). In light of both Washington case law and the application of similar case law by the *Petsmart* and *Safeway* courts, the court held that the contractor's claim was one "arising out of" the vendor's product, and Costco was thus an additional insured. The court granted Costco's motion for summary judgment and entered judgment for Costco.

CWIC timely moved for reconsideration. To prevail, it must meet a high standard:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rules W.D. Wash. CR 7(h)(1).

CWIC moves for reconsideration on the basis of *Allstate Ins. Co. v. Liberty Surplus Ins. Corp.*, No. 63249-3-I, 2010 Wash. App. LEXIS 351 (Wash. Ct. App. Feb. 22, 2010). CWIC argues that the *Allstate* decision supports a narrower reading of the phrase "arising out of" in the Arising-Out-of-Products Clause. CWIC could have brought *Allstate* to the court's attention earlier, but contends that it did not do so because of Ninth Circuit Rule 36-3, which in its view "appears to forbid parties from citing unpublished decisions issued within the Ninth Circuit . . . ." Mot. at 3. CWIC contends that because this court cited the "unpublished" *Petsmart* and *Safeway* cases, it should now reconsider its decision on the basis of the "unpublished" *Allstate* case.

ORDER- 2

CWIC misunderstands the import of "unpublished" cases. To explain, the court begins where CWIC begins, at Ninth Circuit Rule 36-3. It provides as follows:

> Circuit Rule 36-3. Citation of Unpublished Dispositions or Orders
>
> (a) Not Precedent. Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.
>
> (b) Citation of Unpublished Dispositions and Orders Issued on or after January 1, 2007. Unpublished dispositions and orders of this court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1.
>
> (c) Citation of Unpublished Dispositions and Orders Issued before January 1, 2007. Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in the following circumstances.
>
> > (i) They may be cited to this Court or to or by any other court in this circuit when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.
> >
> > (ii) They may be cited to this Court or by any other courts in this circuit for factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case.
> >
> > (iii) They may be cited to this Court in a request to publish a disposition or order made pursuant to Circuit Rule 36-4, or in a petition for panel rehearing or rehearing en banc, in order to demonstrate the existence of a conflict among opinions, dispositions, or orders.

As the text of the rule makes plain, it applies only to "unpublished" orders of the Ninth Circuit Court of Appeals. Although it restricts the citation of such orders in "the courts of this Circuit," it has no application to the "unpublished" decisions of any other court. It does not apply to the "unpublished" decisions of the United States District Court for the Northern District of Illinois (like the *Petsmart* decision), the "unpublished" decisions of the United States District Court for the District of Delaware (like the *Safeway* decision), or the "unpublished" decisions of the Washington Court of Appeals (like the *Allstate* decision). CWIC is mistaken in its belief that Ninth Circuit Rule 36-3 prohibited it from citing *Allstate* to this court. The court puts that mistaken belief aside,

ORDER- 3

however, and explains why the court would not have cited the *Allstate* decision even if CWIC had timely cited it.

The court places the word "unpublished" within quotation marks to call attention to a term that has different meanings in different contexts. People (or at least lawyers and judges) often use the term to distinguish between cases published in one of the West Publishing Company's ("West's") official reporters and those that are not. That distinction was once especially meaningful in the United States courts of appeals, because some of those courts prohibited citation to their own "unpublished" decisions except in narrow circumstances. West, moreover, would publish only those dispositions that those courts' judges designated as "for publication." Within the Ninth Circuit and other federal courts of appeals, some judges took the view that circuit law ought not be shaped by memorandum decisions or other relatively curt dispositions of appeals. *See*, *e.g.*, Alex Kozinski & Stephen Reinhardt, *Please Don't Cite This!*, California Lawyer, June 2000, at 43; *see also* Erica S. Weisgerber, *Unpublished Opinions: A Convenient Means to an Unconstitutional End*, 97 Geo. L.J.621, 627-632 (Jan. 2009) (summarizing judicial views in debate over adoption of Fed. R. App. P. 32.1). In the view of some judges, the practicalities of managing an overwhelming docket dictated that some dispositions must be written not for the purpose of developing the law, but for expediently disposing of cases where appropriate.

For better or worse, that practice has largely gone by the wayside in the federal courts of appeals. In late 2006, Federal Rule of Appellate Procedure 32.1 took effect. Rule 32.1 dictates that a court "may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions" that are designated as "unpublished" and issued on or after January 1, 2007. Thus, no federal court of appeals[1]

---

[1] The court assumes that Rule 32.1 restricts only the federal courts of appeals. Fed. R. App. P. 1(a)(1) ("These rules govern procedure in the United States courts of appeals."). The assumption does not affect today's decision.

may prohibit citation of the "unpublished" disposition of another federal court issued in 2007 or later. As Ninth Circuit Rule 36-3(c) reveals, the practice survives to some extent for unpublished decisions issued prior to 2007.

The distinction between "published" and "unpublished" decisions of the federal *district* courts is markedly different. First, unlike in the circuit courts, the vast majority of district court judges exercise little or no control over which cases become "published" in West's official reporters. Although judges may request the publication of a particular order, West need not grant the request. The undersigned judge has never requested that West (or any other publisher) publish one of its opinions, and the court knows many judges who take the same approach. Nonetheless, many federal district court opinions become "published" at the whim of West. Second, with the advent of the E-Government Act of 2002 (*see* 44 U.S.C. § 3501), virtually every district court order becomes "published" in the sense that it is placed in the online databases on Westlaw.com, Lexis.com, or any of numerous other services. Even before 2002, West and others "published" many decisions of many courts (including federal district courts and state courts of all stripes) in this fashion. Nevertheless, lawyers commonly refer to cases published solely in electronic databases as "unpublished."

More importantly, the distinction between "published" and "unpublished" federal district court decisions is meaningless. This is for the simple reason that such decisions bind no one except the parties in the underlying case. When this court makes an order, no one but the parties before it need pay any attention to it. Even judges within the Western District of Washington are free to ignore the orders of the undersigned judge, to say nothing of the thousands of district court judges across the country. As a practical matter, however, it does not pay to ignore such orders. The undersigned judge (like most other judges) is keenly interested in other courts' decisions on similar issues, even though those decisions are not binding. In its June order, the court looked to *Petsmart* and

*Safeway* decisions because they applied state law that closely resembled Washington law to clauses that were materially identical to the Arising-Out-of-Products Clause.

When looking to another federal district court decision, it generally does not matter whether the decision is "published" in an official reporter, "unpublished" in that it is published only on an electronic database, or "unpublished" in the sense that it exists only in paper format in the archives of whatever court issued it. A few district court judges designate some of their own decisions as "Not for Publication" or "Non-Precedential" and decree that others should not cite them. Whatever legal effect their decrees might have, as a practically matter they serve as a signal to another court that the court issuing the decision did not intend it to contribute to shaping the law. Sometimes, moreover, the length and tenor of a decision (be it published or unpublished) suggests that the issuing court did not intend it to contribute to the development of the law. This court takes that into consideration when reviewing any non-binding precedent of another court. But this court has never forbidden the citation of "unpublished" federal district court decisions.

In state courts, the distinction between "published" and "unpublished" decisions is different still. The court focuses solely on the Washington Court of Appeals, which retains a rule similar to the one that prevailed in the Ninth Circuit prior to the adoption of Fed. R. App. P. 32.1. Washington Court of Appeals judges issuing opinions have the authority to decide if a case will be "published." *See* Wash. RAP 12.3(d),(e) (stating procedures and standards for publication decision). No one arguing before any Washington state court may cite an "unpublished" Washington Court of Appeals decision. Wash. GR 14.1(a) ("A party may not cite as an authority an unpublished opinion of the Court of Appeals.").

This court follows the dictates of the Washington state courts as to their own decisions. It is not required to do so, as Washington court rules do not bind federal courts. Nonetheless, as a matter of comity, the court prefers to interpret state law as the

state courts would. Because Washington courts have made the judgment that "unpublished" state court decisions should not shape their decisions, this court follows their lead. The court notes that Washington courts take a similar approach, giving effect to the "unpublished" dispositions of other courts only to the extent that the other courts would permit it. Wash. GR 14.1(b).

For these reasons, the court declines to further cite the *Allstate* case, and thus there is no basis for the court to reconsider its June order. Given the circumstances before it, however, the court informs the parties that it has considered the *Allstate* case. Many courts consider cases that they will not or cannot cite, although rarely is there occasion for them to announce as much. In this case, the court has considered the *Allstate* case and has determined that even if the Washington Court of Appeals had "published" it, it would not lead to a different result in this case.

The court DENIES CWIC's motion for reconsideration. Dkt. # 20. The court acknowledges the parties' stipulation (Dkt. # 25) resolving any dispute over the amount of attorney fees payable to Costco prior to judgment. The court orders CWIC to pay Costco's attorney fees in accordance with that stipulation.

DATED this 15th day of August, 2011.

The Honorable Richard A. Jones
United States District Court Judge